[See Cases Nos. 18,138 and 18,139.]

---

HEWETT v. SILVERMAN. See Case No. 16,288.

HEWETT (TOMLINSON v.). See Case No. 14,087.

HEWEY (BURNHAM v.). See Case No. 2,175.

---

## Case No. 6,442.

### Ex parte HEWITT et al.

[3 Am. Law Rev. 382.]

District Court, S. D. Mississippi. 1869.

RECONSTRUCTION ACTS—TRIALS BY MILITARY COMMISSION—EXCESSIVE PUNISHMENTS—HABEAS CORPUS.

[1. It was not the purpose of the reconstruction acts to create any new laws for the punishment of crime, but only to secure the enforcement of the existing laws of the state by means of a military commission when, in the opinion of the commanding officer, an impartial trial could not be had in the local courts; and hence, while the course of procedure would necessarily be different from that pursued in the state courts, the party charged could only be required to answer for the violation of some known law in force in the state, and the only punishment which could be inflicted was that which the law had annexed to the offence.]

[2. It is within the power of the district courts to release on habeas corpus a prisoner sentenced by a military commission, under the reconstruction acts, to a longer term of imprisonment than that provided by the law of the state in which the crime was committed; and in such case it is the duty of the court to grant the discharge, and it has no power to remand the prisoner, with directions to execute such punishment as the law has prescribed.]

[This was a writ of habeas corpus to obtain the release of Hewitt and McIlwaine from imprisonment under sentence of a military commission.]

HILL, District Judge. From the allegations made in the petition in this cause, and the return made thereto by John R. Hynes, superintendent of the penitentiary of the state of Mississippi, to whom the writ was directed, the following facts appear out of which the questions now submitted for the determination of the court arise. The petitioners were arrested and put upon their trial before a military commission appointed for the trial of offenders by Major General A. C. Gillem, commanding this district. The specifications and charge upon which they were put upon their trial are substantially as follows: "That said petitioners, with others, citizens of Natchez, in the state of Mississippi, in the county of Adams, in said state, on or about the 19th day of July, 1868, did unlawfully, maliciously, and feloniously conspire and combine together to kill and murder one George Stewart, a teacher of a school for colored children, and, in pursuance of said agreement and conspiracy, did proceed to the house of said Stewart, and by false pretenses induced him to leave his house, and did then and there order him to reveal the password of a secret association called the 'Loyal League,' and, upon said Stewart's refusing to do so, did pour about one gallon of coal oil or turpentine on his head and body, and did order him to kneel down and say his prayers, that he had but a few minutes to live; that said Stewart escaped from them, when they fired at him with a pistol, with intent then and there to kill and murder said Stewart." That, after the testimony on said trial had been heard by said commission, the commission found from the proof that said acts were committed, but were not committed with the intent to kill and murder said Stewart, but with intent to outrage and injure him, and for this offence the petitioners were sentenced to hard labor in the penitentiary of this state for the term of one year, which sentence was approved by the commanding general, and in pursuance to which they have been placed in said penitentiary, in the custody of the superintendent, John R. Hynes. To be discharged from such custody and punishment is the purpose of this application. The petitioners by their counsel concede the jurisdiction and power of the commanding general, when in his opinion a fair and impartial trial of offenders cannot be had, and the offenders punished by the local courts, to cause them to be arrested, tried, and if found guilty, punished by a military tribunal; but insist that they must be judged by the laws in force in the state, and can only be subject to the punishment prescribed by those laws, although the mode of trial may not be required to conform to the forms prescribed by the state laws, and insist that the punishment inflicted in this case is unknown to any law of the state for the offence of which they were found guilty, and is not authorized by the act of congress, empowering the military commander to protect the citizens in their persons and property, and to secure the citizens in their persons and property, for which purpose he is directed and authorized to

cause offenders to be arrested and punished, and further insist that this court has the power and should discharge the petitioners.

The counsel for the respondent, not conceding that the sentence is illegal, insists that, if it were so, this court having no appellate jurisdiction to review and reverse the action of the military tribunal, has no jurisdiction to discharge the petitioners. Two questions are thus presented: 1st, Is the sentence thus pronounced, and which is being executed, authorized by the act of congress conferring this quasi civil jurisdiction upon the military commander? And, 2d, If such power was not conferred, and the sentence authorized, has this court the power to relieve the petitioners from such unauthorized punishment? I am satisfied from a careful examination of the act of congress that the only purpose was to secure all classes of citizens in their rights of persons and property under the laws of the state, whether created by statute or arising out of the common law, and to this end to secure a certainty of punishment on those who might violate the laws; that it was not intended to create any new law for the punishment of crime, but to secure the enforcement of those then existing, and for this purpose their execution was authorized to be committed to the local courts then and now existing, and which were declared to be provisional only, unless that when, in the opinion of the commander, a fair and impartial trial could not be had, and the punishment of the guilty secured in such courts, he might, and it would be his duty to order military commissions or tribunals to convene and try the offenders, and, if found guilty, cause them to be punished; and whilst the mode of proceeding might and necessarily would vary from those pursued in the courts of the state, that the party charged should only be required to answer a violation of some known law in force in the state, and that only such punishment should be inflicted as was annexed to the law for its violation. The act itself, to secure this end, provides that no cruel or unusual punishment shall be inflicted. Congress in this was governed by that which experience has long demonstrated that certainty in punishment, more than severity, prevents crime. This brings us to the consideration of the question as to what the crime or offence is of which the petitioners have been found guilty, and what is the punishment annexed by law therefor.

The petitioners' counsel insist that it is only a conspiracy to commit a crime; that they have been acquitted of any crime or offence the punishment of which is confinement in the penitentiary. That the conspiracy of which they were found guilty is not embraced in the one charged, and therefore no punishment could have been inflicted. This position has been pressed by the learned counsel with great earnestness and ingenuity, but has failed to produce on my mind a conviction of its correctness. The charge and specifications are to be considered in place of an indictment, and constitute but parts of the same indictment, and, when viewed in that light, charge that these petitioners with others did unlawfully assemble, combine, and agree to kill and murder said Stewart, and, in pursuance of that unlawful agreement, did feloniously and maliciously assault said Stewart with intent then and there to kill him. This charge, if true, would constitute a felony under the provisions of article 18, § 8, c. 14, of the Code of 1857, then in force in this state, and the punishment of which is, by the same act, fixed at confinement at hard labor in the penitentiary for a period not to exceed ten years. The commission, sitting in place of a jury, have acquitted the petitioners of the felonious intent to kill and murder, but have found them guilty of an assault with intent to outrage and injure. It is conceded by counsel that if the offence charged is a felonious assault, it contains the less offence of a misdemeanor, and that the party charged may be acquitted of the higher crime and yet found guilty and punished for the smaller offence. But if the offence charged were only the unlawful assembly and conspiracy to commit an offence, and had stopped there, I cannot conceive that a different result could be arrived at other than that the conspiracy to kill and murder contains within it the less aggravated offence to outrage and injure, for he who would kill and murder me would certainly outrage and injure me; the one would certainly be contained within the other,—both purposes being a misdemeanor at the common law, the offence is an agreement and conspiracy to do an unlawful act, no matter what may be the purpose, making it only the more or less aggravated. The offence, whether a conspiracy, an unlawful assembly, or an assault and battery, is a misdemeanor, and punishable by a fine not exceeding five hundred dollars, and confinement in the county jail not exceeding six months. I am satisfied that neither the military commission who imposed the penalty, or the commanding general who approved it, supposed they were exceeding their authority in so doing. I am equally satisfied that the punishment imposed was unauthorized by the act of congress, and that the petitioners' confinement in the penitentiary is an unlawful restraint upon their personal liberty.

The next question is, has this court the jurisdiction to order a release from that confinement? It is insisted by petitioners that it has, and by respondent that it has not. The power of this court, or its judges sitting at chambers, to grant the writ of habeas corpus, and through it to relieve from illegal restraint, is limited by the several acts of congress to specified cases, one of which is to relieve those improperly restrained by the officers of the federal government, claim-

ing to act in their official capacity. This is a necessary power to avoid conflict between the state and federal jurisdictions, and is the proper remedy in this case. I will add, that the principles now announced are not in conflict, but in strict accordance, with the rulings heretofore made by me on these questions.

At this point, I am met by a perplexing question: The parties have been found guilty of an aggravated misdemeanor, one for which they should, if guilty, receive exemplary punishment; and, from the finding, I cannot presume them innocent. Their connections and position in society, instead of mitigating, aggravate their offence; its tendency is to encourage the less intelligent, and those whom we might suppose to be more inconsiderate, to commit acts of outrage and wrong. The law now knows no man on account of his race, color, birth, place, or pursuit in life; it affords, and should afford, equal protection to all, and when properly administered will secure this end; if any offend the law they should be punished by the law, and in no other way. Those who undertake to inflict punishment or wrong upon others without the sanction of the law to-day, should remember that, by so doing, they may become the victims of the lawless to-morrow. Without malice or ill-will toward the petitioners, or toward any citizen of the state, but with a strong desire to see that security of person and property which every good citizen desires, I must be permitted to express regret that it is not within my power to remand the petitioners to the custody of the commanding general, and to declare him to cause that punishment to be inflicted which the law has annexed for the offence with which they stand convicted. When first considering this question, I thought this could be done, believing at that time that the military commander could fix the punishment after conviction, as the judge may do after the verdict of the jury. This I inferred from the provision in the act of congress requiring him to punish, or cause to be punished, offenders; but from the statement of the judge advocate, who represents the respondent, and whose knowledge of military law cannot be questioned, I am satisfied that the military commission is required to fix the punishment; that this was so intended by congress, and that their powers in this case were exhausted, when their finding was approved by the commanding general. I am brought to the conclusion that the commanding general has no further power to punish upon the finding of the commission. I can, therefore, only say to the petitioners, that I hope they are convinced of the impropriety of the wrong they have committed; that they will return to their homes and enter upon the duties of life with a fixed and determined purpose not again to violate the laws of the country in which they live, or the right of any one, no matter what his condition or pursuits may be. I sincerely hope that no one will be encouraged to violate the law, with the hope of escaping punishment from the judgment I feel constrained to pronounce; which is, that the petitioners be discharged and go hence without day.